CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

DAVID J. WARD (CABN 239504)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Fax: (415) 436-7230
    david.ward@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 23-CR-0403 SI |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| RODOLFO "RUDY" PADA, | |
| Defendant, | |

## I. INTRODUCTION

Defendant RODOLFO PADA comes before the Court for sentencing after pleading guilty to one count of Conspiracy to Commit Honest Services Wire Fraud. Pada admitted to accepting over $40,000 in bribes over a 14-year period, all while working as a plan checker at the San Francisco Department of Building Inspection. Pada, a public official, pocketed envelopes of cash, accepted free meals and drinks, and obtained an interest-free mortgage loan and other items of value from his co-conspirators. These were bribes paid to influence him to issue and expedite building permits submitted by a trio of executives from a San Francisco building plans and design firm. Separately, Pada has admitted to

accepting over $6,800 in bribes from a Millbrae, California construction company executive, Alvin Yang, in return for expending and approving his building inspection reviews.

Pada was a public servant tasked with insuring the soundness of office and residential buildings in San Francisco and Millbrae, and he disregarded his duties in order to line his pockets and feed his greed. This conduct was an inexcusable betrayal of the public trust that warrants a significant sentence.

To his credit, Pada admitted responsibility after being charged, and he has cooperated with the government. While he did not provide the government information about any other bribery schemes at DBI, he did provide information that led to the indictment conviction of a construction builder in Millbrae, Alvin Yang. Given all this, the government respectfully asks this Court to grant the government's motion for a downward departure under § 5K1.1 of the U.S. Sentencing Guidelines then further vary downward based on the factors in 18 U.S.C. § 3553(a), and sentence Pada to 12 months and a day in custody and impose a fine of $25,000. The government agrees with U.S. Probation that a term of supervision following custody is not necessary.

**II.     BACKGROUND**

The facts of Rodolfo Pada's crimes are detailed in the Criminal Complaint filed in this case (*Dkt. 1*), as well as the Information (*Dkt. 2*), the Plea Agreement *(Dkt. 11)*, and the Presentence Report *(Dkt. 51)*, along with the Plea Agreements filed in *United States v Bassam Ghassemzadeh,* 23-CR-0418, *United States v. Sia Tahbazof*, 23-CR-00421 SI, *United States v. Reza Khoshnevisan,* 23-CR-00420 SI; and *United States v. Alvin Yang,* 24-CR-00536 SI.

      a.     <u>The DBI Bribery Scheme</u>

Pada was hired by the San Francisco DBI in 1984 as a plan checker. *PSR* ¶ 10. He was tasked with reviewing and approving various building construction and remodeling plans submitted to DBI for approval. *Id.* Pada was required to insure that the building plans, and their underlying building projects, were done safely and in accordance with city and state building and safety codes. *Id.* ¶ 6. Beginning in August 2003, Pada began taking bribes in return for expediting and approving plans. By his own admission, Pada accepted over $40,000 in bribes, including cash, free meals, drinks, an interest-free loan, and other things of value from Siavash Tahbazof, Reza Khoshnevisan, and Bassam Ghassemzadeh,

executives at a building plans design and consulting firm who were seeking approval for their building and construction projects. *PSR.* ¶¶ 12-17.

Among the bribes, Pada admitted to accepting was an $85,000 interest-free loan from co-conspirator Tahbazof, which allowed Pada to pay off a separate, high-interest loan. *PSR* ¶ 15. Pada repaid the loan 18 months later. But while the parties agreed on paper that Pada would pay 6% interest, in fact he paid nothing, saving over $5,00 a year in interest. *PSR* ¶ 15. Tahbazof and Khoshnevisan also provided Pada with free legal services and free architectural plans. *PSR* ¶ 14, 16.

In return, Pada admits that he approved building plans and expedited the issuance of DBI building permits for Tahbazof, Khoshnevisan, Ghassemzadeh, and their companies for 14 years. *PSR* ¶ 12, 13. Pada began accepting bribes from Tahbazof in 2003, and he admits that he continued to accept them for 14 years, all "in return for issuing permits and approvals for construction projects and plans he [Tahbazof] was submitting on behalf of his construction projects." *Dkt 11* (Plea Agreement). Pada further admitted that, beginning in 2012, he started accepting bribes from Khoshnevisan, Tahbazof's business partner, as well as from Ghassemzadeh, Tahbazof's nephew and an engineer at Tahbazof's construction design plans company. *Id.* Pada accepted over $40,000 in bribes over the course of the fourteen-year conspiracy, which only ended when Pada resigned from DBI in September 2017. *Id.*

But Pada's corruption continued after he left the San Francisco DBI. In 2018, Pada began working for a company, CSG Consulting, that provided building inspection services for smaller municipalities, including Millbrae, California. *See United States v. Yang*, 24-CR-00536 SI *(Dkt. 49)* (Presentence Report). Pada was one of the inspectors tasked with overseeing the issuance of building permits and approving building inspections for Yang's properties, and over an 18-month period, Pada accepted over $6,800 in bribes from Yang, a construction executive building or remodeling overseeing the construction of properties in Millbrae. *Id.* Pada was plied with a stream of benefits – expensive meals, golf at an exclusive country club, a free treadmill, and car repair services. *Id . (PSR* ¶ ¶ 9-13). In his Plea Agreement, Yang admits to paying for at least 16 meals for Pada, including thousands of dollars for dinners at sushi restaurants and steakhouses. *Dkt. 45* (Yang Plea Agreement).

SENTENCING MEMORANDUM                    3
23-CR-0403 SI

The bribes were directly tied to official acts by Pada. Yang paid bribes to Pada to facilitate inspection approvals for four properties in Millbrae: 219 Castenada Drive, 1327 Vista Grande, 1224 Frontera Way, and 1359 Ridgewood. *Yang, Dkt. 49 (PSR ¶ 14)*. Those included final inspections, where the properties were inspected to insure, among other things, that they met fire, flooding and earthquake safety codes, that wiring, gas, electrical and plumbing work was up to code, and that the residence otherwise met all federal, state, and local building code requirements.

While Pada was not charged with conspiring with Yang, his actions are nonetheless relevant conduct that may be considered by the Court at sentencing. According to USSG §1B1.4, which cites 18 U.S.C. § 3661, in determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant unless otherwise prohibited by law.

## III.   GUIDELINES CALCULATION ANALYSIS

In the Plea Agreement, the government and the defendant agreed to a U.S. Sentencing Guidelines calculation with an adjusted offense level of 17. *Dkt. 11*. Therefore, the government agrees with U.S. Probation's calculation of the U.S. Sentencing Guidelines, which are as follows:

a.   Base Offense Level, U.S.S.G. §2C1.1(a)(2):   14

b.   Specific offense characteristics under U.S.S.G. Ch. 2:

The offense involved multiple bribes. U.S.S.G. § 2C1.1(b)(1)   +2

The value of the payments or benefits received exceeded $40,000; U.S.S.G §2C1.1(b)(2); U.S.S.G. §2B1.1(b)(1)(D):   +6

c.   Acceptance of Responsibility, U.S.S.G. § 3E1.1(a), (b):   - 3

d.   Zero-Point Offender, U.S.S.G. §  4C1.1(a) and (b)   -2

e.   Adjusted Offense Level   17

## IV.   SENTENCING RECOMMENDATION

### A.   Legal Standard

The U.S. Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process, and are to be a guide and reference point for the Court throughout the sentencing

SENTENCING MEMORANDUM          4
23-CR-0403 SI

process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court is to impose a sentence "sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991. In seeking to accomplish that goal, the Court should consider the following factors set out in 18 U.S.C. § 3553(a):

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;
>
> (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B.    The Government's Recommended Sentence Vindicates the 18 U.S.C. §3553(a) Sentencing Factors**

### 1. *The Facts and Circumstances and the Need For the Sentence to Reflect the Seriousness of the Offense and to Provide Just Punishment for the Offense*

Building inspection rules and regulations exists to ensure the safety and soundness of buildings and construction projects. The mandate of the San Francisco Department of Building Inspection, and CSG Consulting, is to insure that the residents are safe in their homes and their workplaces. Defendant Pada was expected to be the first line of defense in insuring this safety. Instead, he disregarded his duties in return for free meals and drinks, and for envelopes of cash.

Pada's crimes, which stretched on for over fourteen years at DBI, and another 18 months at CSG Consulting, was a fundamental betrayal of his obligations and duties to the people of San Francisco and Millbrae. His conduct put at risk the safety and soundness of buildings, and put residents and others at risk of grave harm. Pada's conduct also harmed the honest builders and companies who did not receive favored treatment, and were therefore disadvantaged by the corruption of Pada and his conspirators.

There have also been extensive collateral consequences from the crimes of Pada and his co-conspirators. The exposure of the corruption at the San Francisco DBI has cost the city hundreds of thousands of dollars in costs to assess the impact of the actions by Pada and other corrupt DBI

SENTENCING MEMORANDUM                5
23-CR-0403 SI

employees and their co-conspirators on the building inspections done in the city.[1]

Finally, there is the broader societal and civic harm wrought by public corruption schemes. It erodes faith in government; it leaves individuals cynical and distrustful. *See e.g, United States v. Brennan* 629 F. Supp. 283, 300 (E.D.N.Y. 1986) ("Bribery is a betrayal of trust. The expectation that one will do what one is relied on to do, is a precious necessity of every social enterprise . . . no crime is more corrosive of our institutions."). As Justice Clarence Thomas explained, bribery is the "perversion or destruction of integrity in the discharge of public duties." *Nixon v. Shrink Missouri Government*, 120 S. Ct. 897, 923 (J. Thomas, dissent), quoting 3 Oxford English Dictionary 974 (1989). Chief Justice William Rehnquist echoed the same sentiment in *Federal Election Commission v. National Conservative Political Action Committee*:, writing that "corruption is the subversion of the political process. Elected officials are influenced to act contrary to their obligations of office by the prospect of financial gain to themselves." 470 U.S. 485, 497 (1985).

The nature and circumstances of this type of offense, and the impact it has had on the City of San Francisco and the City of Millbrae, and their residents and officials, warrants a significant sentence as a means, in part, to reflect "the seriousness of the offense, [and] promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a).

### 2. *The History and Characteristics of the Defendant*

Pada was given the benefit of the American dream. Raised in poverty in the Philippines, Pada nonetheless obtained a civil engineering degree, married and then immigrated to the United States in 1983. *PSR* ¶ 43, 50. He became a naturalized U.S. citizen in 1990, and obtained a master's degree in civil engineering from San Francisco State University in 1993. *PSR* ¶ 50. Pada and his wife have two adult children. *PSR* ¶ 43. He owns $2.9 million home in Millbrae and a $1.3 million vacation home in Las Vegas. *PSR* ¶ 52.

Yet despite all of the opportunities he was given, and all that he has earned, Pada made bribery a central part of his career. He allowed his greed to overtake any sense of right or wrong, to trump the

---

[1] https://www.sfchronicle.com/bayarea/article/sf-corruption-building-inspection-audit-17885560.php.

SENTENCING MEMORANDUM              6
23-CR-0403 SI

duty that he owed to the City of San Francisco and the City of Millbrae as a public employee serving in a critical public safety role. This an inexcusable breach of trust, particularly for someone like defendant Pada, a highly educated and successful public servant. Pada fully knew what he was doing was illegal, yet he let his greed override any sense of civic duty or honesty.

In mitigation, defendant Pada has no prior felony convictions, accepted responsibility promptly, and has cooperated with U.S. Probation during his pretrial release. Pada also has health problems, which the Court should consider. *See PSR* ¶ 46. These factors warrant some variance from the recommended U.S.S.G.s under 18 U.S.C. § 3553(a), but do not warrant a non-custodial sentence.

## V.     MOTION FOR DOWNWARD DEPARTURE UNDER U.S.S.G. 5K1.1

### a. The Court Should Grant the Government's 5K1.1 Motion

"Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S.S.G. § 5K1.1. The Court may consider the following when determining the appropriate amount of the reduction: 1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered; 2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant; 3) the nature and extent of the defendant's assistance; and 4) the timeliness of the defendant's assistance. U.S.S.G. § 5K1.1.

In this case, after being charged and arrested in May 2022, defendant Pada agreed to accept responsibility and admit his crimes, and to cooperate with the government in its ongoing investigation into corruption inside DBI. Pada met with attorneys from the government and agents from the FBI on multiple occasions, and provided the government with corroborating information about his co-conspirators Tahbazof, Khoshnevisan, and Ghassemzadeh. However, Pada did not admit to accepting any bribes from anyone else at DBI over his 30 year time there or provide any information that led to the prosecution of any other individuals at DBI or who sought permits and approvals from DBI.

Pada did provide information that led to the indictment and eventual conviction of Alvin Yang, a Millbrae-California based construction executive who paid over $6,800 in bribes to Pada, including a

treadmill, free golf at a club, and meals and drinks, all in return for Pada approving building permits and issuing inspection approvals for Yang's construction projects. *See United States v. Alvin Yang*, 25-CR-00536 SI.   Given this, the government believes that Pada's cooperation qualifies as substantial assistance under § 5K1.1.  The government respectfully asks the Court to grant its motion for a downward departure from the Sentencing Guidelines under U.S.S.G. § 5K1.1

### b. The Government's Sentencing Recommendation Avoids Unwarranted Sentencing Disparities

A downward departure, along with a variance, to a sentence of 12 months and a day, and a fine of $25,000, is sufficient but not greater than necessary, and does not create unwarranted sentencing disparities among the similarly-situated defendants charged as part of the government's San Francisco DBI corruption prosecutions.  *See* 18 U.S.C. § 3553(a).

Pada is the third former DBI employee to come before this Court for sentencing.  On July 19, 2023, the Court sentenced former DBI Senior Building Inspector Bernard Curran to 12 months in custody after Curran pled guilty to accepting illegal gratuities in violation of 18 U.S.C. § 666(a)(1)(B). *See United States v. Bernard Curran,* 21-CR-0453 SI *(Dkt. 70)*.  Like Pada, Curran was a public employee working at DBI, and like Pada, Curran betrayed his duty of honest services in return for money.  Curran's Guidelines were lower than Pada's Guidelines, but Pada cooperated with the government and pled guilty shortly after being charged.

On June 28, 2024, the Court sentenced former DBI Plan Checker Cyril Yu to 12 months in custody, two years of supervised release, and imposed a fine of $25,000.  *See U.S. v. Yu*, 23-CR-0402 SI *(Dkt. 28)* (Judgment).  Like Pada, Yu admitted to accepting bribes in return for approving and expediting building plan approvals and inspections.  *See Yu, (Dkt 22)* (Plea Agreement).  However, Yu accepted a smaller number of bribes (under $40,000), and his conduct occurred for under two years.  *Id.*  Additionally, Yu did not cooperate.  Given this, a sentence for Pada of 12 months does not create an unwarranted sentencing disparity to the sentences of Curran and Yu.

The Court has sentenced Pada's co-conspirators Ghassemzadeh, Tahbazof, and Khoshnevisan, all who admitted to paying bribes to Pada.  *See Ghassemzadeh,* 23-CR-0418; *Tahbazof*, 23-CR-00421 SI, and *Khoshnevisan,* 23-CR-00420 SI.  In those cases, the Court sentenced the defendants to terms of

SENTENCING MEMORANDUM                8
23-CR-0403 SI

probation. However, those defendants approached the government before they had been charged, admitted their conduct, and agreed to cooperate. Their cooperation directly led to the prosecution of Pada and Yu.

### c. Pada Can and Should Pay a Significant Fine

Finally, as noted in the PSR, Pada has significant assets. *PSR* ¶ 50. As such, he can afford to pay a substantial fine. Given that Pada's crimes were driven by greed and profit, a significant fine is appropriate and would serve as just punishment. Therefore, the government recommends a fine of $25,000, the same fine that was imposed on his co-conspirators Yu, Ghassemzadeh, and Khoshnevisan. Given defendant Pada's assets, the government asks that the Court order payment of the fine be made within 60 days of imposition of judgment. The government agrees with U.S. Probation that, given Pada's age, his lack of criminal history and his familial support, that a term of supervised release is not necessary.

## VI. CONCLUSION

For the foregoing reasons, the government recommends that the Court grant the government's motion for a downward departure under § 5K1.1, to further vary downward from the recommended U.S. Sentencing Guidelines in this case, and sentence defendant Pada to a term of imprisonment of 12 months and a day, and impose a $25,000 fine.

CRAIG H. MISSAKIAN
United States Attorney

Dated: 2/20/2026         　　*/s/ David J. Ward*
　　　　　　　　　　　　DAVID J. WARD
　　　　　　　　　　　　Assistant United States Attorney

SENTENCING MEMORANDUM         9
23-CR-0403 SI